UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
DICKINSON R. DEBEVOISE
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & COURTHOUSE
50 WALNUT ST., ROOM 5083
P.O. BOX 999
NEWARK, NJ 07101-0999

August 15, 2005

Richard H. Webber, Esq.
James A. Saville, Jr., Esq.
HILL RIVKINS & HAYDEN LLP
51 Newark Street
Suite 404
Hoboken, New Jersey 07030-4543

    Attorneys for Plaintiff Valero Marketing & Supply Company

Michael G. Davies, Esq.
Charles S. Caranicas, Esq.
VEDDER, PRICE, KAUFMAN & KAMMHOLZ P.C.
5 Becker Farm Road
Roseland, New Jersey 07068

805 Third Avenue
New York, New York 10022

    Attorneys for Defendants Greeni Oy and Greeni Trading Oy

Re:   *Valero Marketing & Supply Co. v. Greeni Oy & Greeni Trading Oy*
      Civ. No. 01-5254

Dear Counsel:

    Defendants, Greeni Oy and Greeni Trading Oy (together "Greeni") move, purportedly pursuant to Fed. R. Civ. P. 60 and L. Civ. R. 7.1(g), requesting the Court to amend its June 14, 2005 opinion denying Plaintiff's, Valero Marketing & Supply Company ("Valero"), motion for partial summary judgment to

1

delete its finding that "[o]n September 14, 2001, a second agreement was reached". The second agreement provided that Valero would accept delivery of the naphtha via barges and that Valero would accept naphtha delivered to it before September 24, 2001 at the full contract price and that it would accept, at a discounted price, naphtha delivered to it between September 20-24, 2001.

The facts relevant to Valero's motion for partial summary judgment and the present motion to amend were recounted in this Court's June 14, 2005 opinion and there is no need to repeat them here.

Greeni contends that "the Opinion as it presently stands may be interpreted as establishing for trial purposes that the existence and terms of a second agreement are undisputed, when, in fact, they are in dispute" (Greeni Brief at 3). Greeni argues that the existence of a second agreement is a disputed fact. It contends that a second agreement was never reached nor did it agree to accept a lower price for its cargo; rather, it contends, Valero tried to unilaterally impose a lower price for the naphtha on Greeni.

The portions of this Court's opinion that are in issue follow:

> On September 14, 2001, a second agreement was reached, under which Valero would accept delivery of the naphtha via barges (from the Bear G to Valero's dock) at Greeni's risk and expense.[1] The agreement also stipulated that Valero would accept naphtha delivered to it before September 20, 2001 at the full contract price and that it would accept, at a discounted price, naphtha delivered to it between September 20-24, 2001.

(June 14, 2005 Opinion at 5).

> Further, according to Valero, Greeni breached the new contract providing for a delayed delivery at a reduced price by failing to deliver in accordance with the new time table.

(June 14, 2005 Opinion at 15).

---

[1] Initially, after agreeing to delivery of the naphtha via barges from the Bear G, Valero offered to aid Greeni in securing the barges, but Valero ultimately found that it was not able to provide this assistance.

2

This Court will not amend its opinion because the evidence submitted by the parties establishes that there was a second agreement. The evidence includes i) the testimony of one of Greeni's owners, ii) the testimony of a Valero trader, and iii) a confirmation of the second agreement to which Greeni voiced no objection.

Ilkka Kokko, one of the two owners of Greeni testified:

A ...And then basically on the 14th, Cees [van der Hout] called me and said that Valero is willing to take a certain quantity with a discount and if delivered to the terminal by the 23rd. And after various discussions, I said to Cees that, I mean, what choice do we have? And when he was asking do we agree.
And I just said that, I mean, we have no other choice.

(Saville Cert., Ex. 2, Kokko Dep. 161:18-162:2).

Stuart Burt, the trader responsible for Valero's blending operation in Perth Amboy, New Jersey, testified that there was a second agreement:

Q Were the items set forth in this contract the only options that Valero was providing to Greeni trading at that time?

A I don't think Valero was providing options to Greeni since they had not performed and they were in breach of the original contract. This was just a negotiation for, in my opinion, what is a new contract. It's stated as "Revised" simply because we didn't start with – completely from scratch. But in the end, it was a new contract with new terms which was a different price, different laycan, because the fact was that Greeni was in breach of the original contract and it was no longer valid.
(Saville Cert, Ex. 1, Stuart Dep. 174:6-18).

A written confirmation that Valero sent to Greeni also outlines in detail the terms of the second

3

agreement. The first paragraph of the confirmation reads:

> REVISION – REMARKS –ON SEPTEMBER 14, 2001 THIS CONTRACT WAS RENEGOTIATED. THE EXISTING CONTRACT DETAILS APPLY TO ANY AND ALL VOLUME TENDERED TO THE VALERO DOCK BEFORE 24:00 HRS ON 9/20/01. ANY VOLUME TENDERED AFTER THAT WILL BE DISCOUNTED BY $1.75/CPG, FOR A FINAL EX-DUTY DIFF OF -$.1690 CPG. FURTHERMORE, VALERO IS NOT BOUND TO ACCEPT ANY VOLUME THAT IS TENDERED TO THE VALERO DOCK AFTER 24:00 HRS ON 9/24/01. ALL LIGHTERING EQUIPMENT CHARTERED FOR THE DELIVERY MUST BE APPROVED BY VALERO PRIOR TO THE VESSEL TENDER TO THE DOCK.

(Saville Cert., Ex. 1).

To support its contention, Greeni points to its previously submitted Answer and Affirmative Defenses to Second Amended Complaint and Counterclaims ("Answer"). However, Valero correctly points out that pursuant to FED. R. CIV. P. 56(e), Greeni cannot rely on the allegations made in its pleadings in support of its motion. Rule 56(e) states:

> ...When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The evidence of the existence and terms of the September 14, 2001 agreement is not negated by competent evidence. There is no reason to modify the Court's June 14, 2005 opinion, and therefore Greeni's motion will be denied.

Very Truly Yours,

Dickinson R. Debevoise, U.S.S.D.J.

4